UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER 1:25-cv-20763-JB

RITA CROCKETT,

     Plaintiff,

vs.

FLORIDA INTERNATIONAL UNIVERSITY
BOARD OF TRUSTEES,

     Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW AND MOTION TO STRIKE IMMATERIAL AND IMPERTINENT ALLEGATIONS

Defendant, FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES (hereinafter named "FIU"), by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 12 and the Southern District of Florida Local Rules, hereby files this Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law, and states:[1]

1. This is a purported discrimination and retaliation action arising from Plaintiff's separation of employment with FIU. Plaintiff has alleged multiple causes of action (or "Counts") against the Defendant based on purported violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and Title IX of the Education Amendments of 1972 ("Title IX"). The First Count alleges gender discrimination – disparate treatment in violation of Title VII; the Second Count alleges gender

---

[1] This Motion only seeks dismissal of Counts 3, 6-9. This Court has ruled that defendants need not file a partial answer until the Court has ruled on the motion to dismiss. *See Berenson v. John Hancock Life Ins. Co.*, No. 22-81866-CV, 2023 WL 4763179, at *1 (S.D. Fla. May 2, 2023) (Middlebrooks, J.); *Raptor, LLC v. Odebrecht Constr., Inc.*, No. 17-21509-CIV, 2018 WL 11352677, at *1 (S.D. Fla. Jan. 10, 2018) (Altonaga, J.); *Beaulieu v. Bd. of Trustees of Univ. of W. Fla.*, No. 3:07CV30 RVEMT, 2007 WL 2020161, at *2 (N.D. Fla. July 9, 2007) (Vinson, J.).

discrimination – pay discrimination in violation of Title VII; the Third Count alleges hostile work environment based on gender in violation of Title VII; the Fourth Count alleges race discrimination – disparate treatment in violation of Title VII; the Fifth Count alleges race discrimination – pay discrimination in violation of Title VII; the Sixth Count alleges count alleges hostile work environment based on race in violation of Title VII; the Seventh Count alleges retaliation pursuant to Title VII; the Eighth Count alleges retaliation pursuant to Tile IX; and the Ninth Count alleges segregation or limitation in violation of Title VII. The First Amended Complaint is procedurally and substantively defective requiring dismissal on all counts.

2.      Plaintiff's Title IX employment retaliation claim in the Eighth Count must be dismissed because "Title IX does not create an implied right of action for sex discrimination in employment." *Joseph v. Bd. of Regents of the Univ. Sys. of Georgia*, 121 F.4th 855, 869 (11th Cir. 2024); *see also Hazel v. Sch. Bd. of Dade Cty., Fla.*, 7 F. Supp. 2d 1349, 1354 (S.D. Fla. 1998) (dismissing Title IX claims with prejudice and adopting "the line of cases that hold that Title VII is the exclusive remedy for employment discrimination claims on the basis of sex in federally funded educational institutions"). This is the current state of the law in the Eleventh Circuit.

3.      The First Amended Complaint fails to establish causal connection between the protected activity and the adverse employment action to support a retaliation claim in Count Seven. *Melvin v. Walmart Inc.*, No. 5:20-CV-51-MW/MJF, 2021 WL 5889995, at *3 (N.D. Fla. Nov. 9, 2021), *report and recommendation adopted*, No. 5:20CV51-MW/MJF, 2021 WL 5882529 (N.D. Fla. Dec. 13, 2021). "[I]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th

Cir. 2007). The allegations do not establish any temporal proximity given her protected activity occurred nearly eight (8) months prior to her termination.

4.       Moreover, Plaintiff has failed to demonstrate or allege that her protected activity was the "but-for" cause of the alleged adverse action. Retaliation claims must be established through "traditional principles of but-for causation" which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). Accordingly, the retaliation claims must be dismissed for failure to state a cause of action.   *See Collins,* 2019 WL 5784679, at *2 (dismissing retaliation complaint where plaintiff failed to specifically plead but-for causation); *see also Hopkins v. Saint Lucie County School Bd.,* 399 Fed. Appx. 563 (11th Cir. 2010) (affirming dismissal of retaliation claim where complaint lacked allegations demonstrating causal connection between protected activity and termination).

5.       Plaintiff's Title VII segregation claim pursuant to 42 U.S.C. § 2000e-2(a)(2) in Count Nine must be dismissed because such pattern-and-practice theories are reserved for the government and not available to individual private litigants. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977); *Monaco v. City of Jacksonville*, 51 F. Supp. 3d 1251, 1260 (M.D. Fla. 2014), *aff'd*, 671 F. App'x 737 (11th Cir. 2016).

6.       The discrimination claims in Counts Three and Six under Title VII premised on a hostile work environment, must be dismissed for failure to state a cause of action. The allegations of Plaintiff's First Amended Complaint simply fail to demonstrate severe or pervasive conduct. *Miller v. Kenworth of Dothan, Inc.* 277 F.3d 1269, 1275 (11th Cir. 2002). Instead, Plaintiff has merely alleged isolated and conclusory instances of unpleasant conduct concerning office displacement, micromanagement, scrutiny, and exclusion which have been found to be insufficient

to show that objectively severe or pervasive harassment occurred sufficient to sustain a hostile work environment claim. *See McKitt v. Alabama Alcoholic Beverage Control Bd.*, No. 2:12-CV-673-WHA, 2013 WL 5406804, at \*12 (M.D. Ala. Sept. 25, 2013), *aff'd*, 571 F. App'x 867 (11th Cir. 2014); *Zarza v. Tallahassee Hous. Auth.*, 686 F. App'x 747, 752–53 (11th Cir. 2017); *see also Goldwire v. City of Riviera Beach*, No. 9:18-CV-81285-WPD, 2020 WL 14041267, at \*4 (S.D. Fla. Sept. 9, 2020). Counts Three and Six are therefore subject to dismissal. *See Foster v. Select Medical Corp., Inc.*, 2012 WL 1415499, at \*6 (M.D. Fla. 2012); *see also Perrero v. Spectator Management Group,* 2006 WL 8432607, at \*5-7 (S.D. Fla. 2006).

7.  References to broader historical injustices, hiring statistics of other universities, and breach of duty of care allegations in paragraphs 14-24, 26-28, 63, 67-81 should be stricken as immaterial and impertinent under Rule 12(f), Federal Rules of Civil Procedure. *See Smith v. City of Lake City, Fla.*, No. 3:12-CV-553-J-99MMH, 2012 WL 4772286, at \*2 (M.D. Fla. Oct. 8, 2012).

<u>**MEMORANDUM OF LAW**</u>
***Dismissal Standard***

Under the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relied." Fed. R. Civ. P. 8(a)(2). This requirement gives the defendant fair notice, as well as the supporting grounds for the specific claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant may move to dismiss a complaint for "failure to state a claim on which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a defendant's motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must contain enough factual allegations to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570. The facts found in the complaint must "state a claim to relief that is plausible on its face. *Id*.

Detailed factual allegations are not required to support the complaint, but the pleading obligation for a plaintiff "requires more than labels and conclusion," or "a formulaic recitation of the elements of a cause of action. *Id*. at 555. The Rule 8 pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Supreme Court's holding in *Ashcroft v. Iqbal* requires the trial courts to "identify allegations of the complaint that because of their conclusory nature are not entitled to the assumption of truth." *Spence-Jones v. Rundle*, 991 F. Supp. 2d 1221, 1238 (S.D. Fla. 2013) (citing *Ashcroft*, 556 U.S. 662). Allegations "full of self-serving hyperbole, personal attacks, and formulaic, implausible conclusions" must be disregarded. *Id*. at 1224.

In addition, Rule 12 provides, in pertinent part, that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Striking a pleading is a "drastic remedy to be resorted to only when required for the purpose of justice." *Vega v. Knowledge Learning Corp.*, No. 10-81519-CIV, 2011 WL 13225181, at *2 (S.D. Fla. July 1, 2011). "Motion to strike will be granted only if the matter sought to be omitted has no possible relationship to the controversy, may confuse issues, or otherwise prejudice a party." *Blake v. Batmasian*, 318 F.R.D. 698 (S.D. Fla. 2017).

I.    **TITLE IX DOES NOT PROVIDE AN IMPLIED RIGHT OF ACTION FOR EMPLOYMENT RETALIATION.**

**A.  Count Eight is Barred by the Eleventh Circuit Ruling in *Joseph***

The Eighth Count, alleging retaliation in violation of Title IX, must also be dismissed. "Title IX does not create an implied right of action for sex discrimination in employment." *Joseph*

*v. Bd. of Regents of the Univ. Sys. of Georgia*, 121 F.4th 855, 869 (11th Cir. 2024)[2]. Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Courts have interpreted this to mean "the statute prohibits both sex discrimination and retaliation against an individual who complains about sex-based discrimination perpetrated by an educational institution receiving federal funds." *Drisin*, 2017 WL 3505299 at *3. However, "nothing about that language indicates congressional intent to provide a private right of action to employees of educational institutions." *Joseph*, 121 F.4th at 868. In fact, "Congress enacted Title IX under the Spending Clause and provided an express remedial scheme for withdrawing federal funding. *See* 20 U.S.C. § 1682. For most Spending Clause legislation, 'the typical remedy for ... noncompliance with federally imposed conditions is not a private cause of action ... but rather action by the Federal Government to terminate funds.'" *Id*. at 865.

Although "the Supreme Court has held that Title IX provides an implied right of action for students who complain of sex discrimination by schools that receive federal funds" (citing to *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979)), the Supreme Court had "never extended the implied private right of action under Title IX to claims of sex discrimination for employees of educational institutions." *Joseph*, 121 F.4th at 866-867. *Jospeh* noted that student "would otherwise have no statutory remedy to enforce their substantive right under Title IX." *Id*. at 868.

As explained in *Joseph*, the Supreme Court's decision in *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005) created a "private right of action for retaliation **for an employee's**

---

[2] After amending her pleading following oral argument, Plaintiff withdrew her Title IX sex discrimination count, based on *Joseph*, but continues to pursue retaliation under Title IX. *Joseph* is under review as a petition for certiorari is pending before the United States Supreme Court.

**complaint about discrimination against students**.” *Joseph v. Bd. of Regents of the Univ. Sys. of Georgia*, 121 F.4th 855, 866 (11th Cir. 2024). Plaintiff's alleged protected activity here is materially different. Instead, the factual allegations Plaintiff relies on in support of her Title IX retaliation claim describe only complaints to Athletic Director Scott Carr regarding Ms. Berg-McGraw's alleged conduct toward her individually. (ECF No. 39 ¶¶ 136-138). Specifically, Plaintiff asserts that Ms. Berg-McGraw:

- Micromanaged Plaintiff's coaching efforts;
- Told Plaintiff not to recruit Americans because she "did not connect with them;"
- Moved Plaintiff from her corner office, deceitfully telling her Scott Carr, Athletic Director, wanted it, but actually gave it to Christina Robertson, the white coach who replaced Plaintiff as Indoor Volleyball Coach, while Plaintiff was placed in an external trailer;
- Gave Plaintiff low evaluation scores, sometimes going back and changing them when Plaintiff pushed back on the score and Ms. Berg could not justify it (e.g., giving Plaintiff a 3/5 for "Job Knowledge" in October of 2022 following a strong season, then later changing it to a 4/5);
- Skipped over Plaintiff when announcing coaches at an event;
- Hired a white, less-experienced Indoor Volleyball coach over Plaintiff's African American daughter, an FIU grad who had been coaching for years;
- Would not approve Plaintiff's requests for busses while simultaneously approving them for white male coaches; and
- Would pose questions to players insinuating they should talk badly of Plaintiff. (ECF No. 39, ¶ 136).

In *Joseph*, the Eleventh Circuit rejected a retaliation claim based on plaintiff's participation in a Title IX investigation of complaints against himself because, unlike *Jackson*, the plaintiff's actions did "not protect students." *Joseph v. Bd. of Regents of the Univ. Sys. of Georgia*, 121 F.4th 855, 869–70 (11th Cir. 2024). In the present case, Plaintiff's complaints seek only to address alleged discrimination directed to her as a coach, not at any student athlete, and therefore fall outside the scope of Title IX protection.

Plaintiff attempts to repackage her complaint related to denial of bus requests as a Title IX complaint about "the differential provision of transportation services for women's teams when

compared to men's teams." (ECF No. 39, ¶ 253). However, her allegations concern only the denial of her request, not discrimination against female student athletes or unequal access to transportation for female students. Moreover, Plaintiff expressly pleads that she complained to Mr. Carr about alleged discriminatory treatment "indicating she felt it was based on **her** gender, race, or some combination of the two, citing some of the above examples." (ECF No. 39, ¶ 138). Thus, by her own pleading, the protected activity she claims was opposition to discrimination directed at herself, not opposition to discrimination against students. None of the remaining paragraphs incorporated by reference allege that Plaintiff complained about discrimination against students or any discriminatory practice within the educational program. (ECF No. 39, ¶¶ 1-9, 67-81, 119-153, 251). Thus, her Title IX retaliation theory falls outside the scope of *Jackson*, and must be dismissed as a matter of law.

### B. Duplicative Retaliation Claims Under Title IX and Title VII

Title VII, similarly, makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex." 42 U.S.C. § 2000e-2(a)(1). However, unlike a Title IX claim, "[b]efore instituting a Title VII action in federal district court, a private plaintiff must file an EEOC complaint against the discriminating party and receive a statutory notice from the EEOC of his or her right to sue the respondent named in the charge." *Forehand v. Fla. State Hosp. at Chattahoochee*, 89 F. 3d 1562, 1567 (11th Cir. 1996). Because of the overlapping nature of these two statutes, courts have clarified "Title IX was not intended to enable employees of educational institutions complaining of gender discrimination to bypass the remedial scheme Congress established in Title VII." *Drisin*, 2017 WL 3505299 at *3.

*Joseph* further explained that it is "unlikely that Congress intended Title VII's express private right of action and Title IX's implied right of action to provide overlapping remedies . . . And because Title IX was enacted under the Spending Clause, it is dubious that recipients of federal funds would understand that they have knowingly and voluntarily accepted potential liability for damages for claims of employment discrimination under Title IX when those kinds of claims are expressly provided for and regulated by Title VII." *Joseph*, 121 F.4th at 868.

Here, Plaintiff was an FIU employee, hired as Head Women's Beach Volleyball Coach. (ECF No. 39, ¶ 128). She brings a nearly identical Count for retaliation under Title VII based on the same alleged complaints of discrimination directed at her personally by her supervisor. (ECF No. 39, ¶¶ 239-250). As such, her status as an employee of a federally funded university seeking redress for purported employment discrimination means her sole road forward is proceeding under Title VII. *See Gonzalez v. Lansing*, 2020 WL 13227493, at *4 (S.D. Fla. June 4, 2020) ("Title VII is the exclusive remedy for redressing federal employment discrimination."). The Eighth Cause of Action should therefore be dismissed[3]. *See Joseph*, 121 F.4th at 869 (dismissing Title IX claims of employment discrimination).

## II.    <u>RETALIATION UNDER COUNT SEVEN FAILS FOR LACK OF CAUSATION</u>

---

[3] Additionally, district courts in this Circuit addressing the issue have generally held that Title VII preempts a Title IX employment discrimination claim filed by a plaintiff who is *solely an employee* (and not a student) of a federally funded educational institution. *See e.g. Hazel v. Sch. Bd. of Dade Cty., Fla.*, 7 F. Supp. 2d 1349, 1354 (S.D. Fla. 1998)(Student Activities Director, who was an employee and not a student, could not proceed via Title IX when Title VII was available); *Blalock v. Dale County Bd. of Educ.*, 84 F. Supp. 2d 1291 (M.D. Ala. 1999)(Title VII pre-empts Title IX for employee plaintiff); *Cooper v. Georgia Gwinnett Coll.*, 2016 WL 6246888, at *6 (N.D. Ga. 2016)(same); *Reese v. Emory Univ.*, 2015 WL 13649300, at *5 (N.D. Ga. 2015)(same); *Torres v. Sch. Dist. of Manatee Cty., Fla.*, 2014 WL 4185364 at *4 (M.D. Fla. 2014)(same); *Tompkins v. Barker*, 2011 WL 3583413 at *5 (M.D. Ala. 2011)(same); *Smedley v. Fulton Cty. Sch. Dist.*, 2011 WL 13175900 at *3 (N.D. Ga. 2011)(same); *Schultz v. Bd. of Trustees of Univ. of W. Fla.*, 2007 WL 1490714 at *3 (N.D. Fla. 2007)(same); *Drisin*, 2017 WL 3505299 at *3(same); *see also Waid v. Merrill Area Pub. Sch.*, 91 F.3d 857 (7th Cir. 1996).

The Seventh cause of action claims retaliation in violation of Title VII.[4] To state a claim of retaliation under Title VII, Plaintiff is required to show: (1) that he was engaged in a statutorily protected activity; (2) he suffered a materially adverse action; and (3) that the adverse action was because of the statutorily protected activity. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008); *Goldsmith*, 513 F. 3d at 1277; *Kessler v. Zimmerman Advertising, LLC,* 2017 WL 5178351, at *2 (S.D. Fla. 2017) (citing *Crawford v. Carroll*, 529 F. 3d 961, 970 (11th Cir. 2008)).

### A. Plaintiff Has Not Established the Causal Connection Element

Plaintiff has not provided any allegations suggesting that her voiced concerns to Athletic Director Scott Carr in October 2022 and her termination in May 2023 were causally connected. "To allege a causal connection, Plaintiff must show that: (1) the decision maker knew of her protected activity; and (2) the protected activity and adverse action were not wholly unrelated." *Flemings v. U.S. Sec. Assocs., Inc.*, No. 18-24861-CIV, 2020 WL 1503638, at *9 (S.D. Fla. Mar. 4, 2020), *report and recommendation adopted*, No. 18-24861-CIV, 2020 WL 1493468 (S.D. Fla. Mar. 27, 2020). Plaintiff's First Amended Complaint fails to cure its prior deficiencies, as Plaintiff still does not identify the decisionmakers in her termination, nor does Plaintiff allege facts linking any specific decisionmaker to discriminatory intent. Instead, she generally states that "Defendant fired Plaintiff" and that she was "called in and fired from her position on June 27, 2023" following her supervisor's notification on May 11, 2023 that her year-end student surveys contained "some bad surveys in there". (ECF No. 39, ¶¶ 140-141, 246). Furthermore, Plaintiff does not allege that any individual responsible for the alleged adverse action was aware of her alleged protected

---

[4] Count Eight also claims retaliation in violation of Title IX. As stated *supra*, Plaintiff does not have a private right of action under Title IX and is preempted by Title VII. However, assuming *arguendo* such claims proceed, this argument equally applies to both causes of action. *See also Joseph*, 121 F.4th at 869 (dismissing Title IX retaliatory discrimination claim with respect to complaints of differential treatment as female coach).

activity nearly eight (8) months prior to the termination decision. "Having failed to allege facts demonstrating that the decision maker(s) knew of Plaintiff's protected activity at the time of the allegedly adverse employment actions, she has not plausibly stated a claim for retaliation." *Flemings*, 2020 WL 1503638 at *9 (citing *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010) (no causal connection where "[t]here ... is no evidence in the record to support a finding that [the decision makers] knew of any [protected activity] at the time the decision was made to terminate [the plaintiff's] employment.")).

Moreover, given the alleged protected activity occurred in October 2022 and Plaintiff was terminated in June of 2023 (ECF No. 39, ¶¶ 136-138, 141) which is approximately eight (8) months after her protected conduct, the First Amended Complaint remains legally insufficient because it **fails** to even demonstrate, at the very least, **any temporal proximity** to satisfy the causation element. "[I]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). "The Eleventh Circuit has held 'in the absence of any other evidence of causation, a three-month proximity between a protected activity and an adverse employment action is insufficient to create a jury issue on causation.'" *Thompson v. City of Miami Beach, Fla.*, 990 F. Supp. 2d 1335, 1343 (S.D. Fla. 2014) (granting dismissal and finding the adverse employment actions and retaliatory acts were too far removed from employee's protected activity to sustain the causal connection element of the Title VII retaliation claim).

### B. Plaintiff Failed to Allege But-For Causation

Importantly, retaliation claims must be established through "traditional principles of but-for causation" which "requires proof that the unlawful retaliation would not have occurred in the

absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). In other words, Plaintiff is required to demonstrate that her protected activity was the "but-for" cause of the alleged adverse employment action. *See Id.* at 1534; *see also Collins v. Department of Children and Families,* 2019 WL 5784679, at *2 (S.D. Fla. 2019). "Simply stating that she complained and was retaliated against does not pass muster." *Collins v. Dep't of Child. & Fams.*, 2019 WL 5784679, at *2 (S.D. Fla. Nov. 5, 2019).

Here, Plaintiff once again failed to establish or even allege that her opposition to her supervisor's alleged discriminatory conduct was the but-for cause of her alleged termination. *See generally* ECF No. 39. Plaintiff instead alleges that "Defendant jumped on the opportunity to rely on biased student athlete complaints in an attempt to justify Plaintiff's termination shortly after she complained about discrimination." (ECF No. 39, ¶ 247). This conclusory allegation, however, is not sufficient to establish the requisite but-for causation. *See Collins,* 2019 WL 5784679, at *2 (finding allegation merely stating that plaintiff complained and was retaliated against insufficient to establish but-for causation). "[I]t is not enough to show simply that retaliation was a motivating factor among others in the adverse action." *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1277 (11th Cir. 2021); *Alexander v. Sch. Bd. of Palm Beach Cnty., Fla.*, No. 20-80336-CIV, 2021 WL 3857636, at *4 (S.D. Fla. Aug. 10, 2021), *report and recommendation adopted*, No. 20-80336-CIV, 2022 WL 94025 (S.D. Fla. Jan. 10, 2022).

Absent from the First Amended Complaint is any allegation specifically claiming that the sole cause of Plaintiff's alleged termination was her engagement in a statutorily protected activity. *See generally* ECF No. 39. Therefore, Count Seven must be dismissed for failure to state a claim as a matter of law. *See Collins*, 2019 WL 5784679 at *2 (dismissing retaliation complaint where plaintiff failed to specifically plead but-for causation); *see also Hopkins v. Saint Lucie County*

*School Bd.,* 399 Fed. Appx. 563 (11th Cir. 2010) (affirming dismissal of retaliation claim where complaint lacked allegations demonstrating causal connection between protected activity and termination). None of the allegations appear to address dismissal arguments related to decision maker –

### III. PLAINTIFF'S TITLE VII PATTERN OR PRACTICE THEORY IN COUNT NINE IS NOT ACTIONABLE FOR PLAINTIFF, AN INDIVIDUAL PRIVATE LITIGANT

Plaintiff's attempt to plead a Title VII pattern-or-practice theory of discrimination fails as a matter of law because such claims are reserved to the government, not individual private litigants.

In *Teamsters*, the United States brought an action pursuant to 42 U.S.C. § 2000e-2(a) alleging that the employer violated § 703(a) by engaging in systemic discrimination against Negroes and Spanish surnamed individuals. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 334–35 n.14 (1977). "The disparity in treatment allegedly involved the refusal to recruit, hire, transfer, or promote minority group members on an equal basis with white people, particularly with respect to line-driving positions" and the "ultimate factual issues are thus simply whether there was a pattern or practice of such disparate treatment and, if so, whether the differences were 'racially premised.'" *Int'l Bhd. of Teamsters*, 431 U.S. at 335 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805 n. 18). Thus, under 42 U.S.C. § 2000e-2(a), Section 703(a) of Title VII, the issue is whether the employer "engaged in a pattern or practice of discriminatory hiring practices" that were system-wide. *Int'l Bhd. of Teamsters*, 431 U.S. at 334–35.

The First Amended Complaint plainly attempts to proceed under a *Teamsters* pattern-or-practice theory. Plaintiff alleged that Defendant has maintained "a hiring and assignment practice of limiting women to women's coaching positions" and "required to work within a segregated system that imposed additional burdens on female coaches." (ECF No. 39, ¶¶ 262, 265, 266).

Moreover, Plaintiff expressly cites to *Teamsters* in support of her theory. (ECF No. 39, ¶ 264). Although Plaintiff asserts that she is not bringing a claim under 42 U.S.C. § 2000e-6, that disclaimer does not cure the defect in her pleadings. (ECF No. 39, ¶ 260). Section 2000e-6 is the statutory vehicle through which the government typically brings "pattern or practice" enforcement actions. *See Int'l Bhd. of Teamsters*, 431 U.S. at 328 n. 1.

Of critical importance, the authority to bring claims of widespread employment discrimination or pattern-or practice discrimination under Title VII is reserved for the **government or certified class actions**, and is **not available to individual private plaintiffs**. *See Monaco v. City of Jacksonville*, 51 F. Supp. 3d 1251, 1260 (M.D. Fla. 2014), *aff'd*, 671 F. App'x 737 (11th Cir. 2016) ("The *Teamsters* 'pattern or practice' method of proof may be utilized by the government or in private class actions, but is not available to individual private plaintiffs"); *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000) (stating that the pattern or practice framework established in *Teamster* may be brought by the EEOC or by a class of private plaintiffs); *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 964–65 (11th Cir. 2008) (Title VII pattern or practice claims may be brought as class action or by the government); *Cote v. Shinseki*, No. 807-CV-1524-T-TBM, 2009 WL 1537901, at *9 (M.D. Fla. June 2, 2009) ("in this circuit, [p]laintiffs may not assert an individual claim for pattern and practice [claim] of discrimination"); *Clark v. Zale Corp.*, No. 6:12-CV-1667-ORL-28, 2013 WL 4927902, at *3 (M.D. Fla. Sept. 12, 2013) ("In the Eleventh Circuit, an individual plaintiff cannot maintain a pattern or practice claim without certifying a class action"); 42 U.S.C. § 2000e-6 (authorizing Attorney General to bring pattern or practice claims).

Further, the *Teamsters* framework is not a freestanding cause of action but rather a method of proof loosely referred to as a "pattern-or-practice claim." *Monaco*, 51 F. Supp. 3d at 1259 n. 5.

"Evidence of an employer's general practice of discrimination may be highly relevant to an individual disparate treatment ... claim," it is nonetheless not a viable "method of proof as an independent and distinct method of establishing liability." *Colson v. Wal-Mart Stores, Inc.*, 2019 WL 5102173, at *4 (S.D. Fla. Oct. 11, 2019); *Gamarra v. Wal-Mart Stores, Inc.*, 2019 WL 5102234, at *3 (S.D. Fla. Oct. 11, 2019). Accordingly Count Eight must be dismissed.

## IV. PLAINTIFF FAILED TO ESTABLISH SEVERE AND PERVASIVE ELEMENTS OF HOSTILE WORK ENVIRONMENT CLAIMS IN COUNTS THREE AND SIX

To state a plausible hostile work environment claim, Plaintiff must allege facts showing that (1) she belongs to a protected class; (2) she was subjected to unwelcomed harassment; (3) the harassment was based on her membership of the protected group; (4) the harassment was sufficiently severe or pervasive enough to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for the hostile environment under either vicarious or direct liability. *LeBlanc v. TJX Companies, Inc.,* 214 F. Supp. 2d 1319, 1331 (S.D. Fla. 2002); *Edgerton v. City of Plantation*, No. 14-61472-CIV, 2016 WL 8943943, at *6 (S.D. Fla. Aug. 17, 2016), *aff'd*, 682 F. App'x 748 (11th Cir. 2017).

The Eleventh Circuit has established that a hostile work environment claim under Title VII must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the condition of the victim's employment and create and abusive working environment." *Edgerton v. City of Plantation*, 2016 WL 8943943, at *6 (citing *Harris v. Forklift Systems, Inc.,* 114 S. Ct. 367, 370 (1993)). This demanding standard for hostile work environment claims is designed to "ensure that Title VII does not become a 'general civility code.'" *Id*. (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not constitute a hostile work environment. *Id*.

Although Plaintiff is a member of a protected group who believes she was subjected to unwarranted harassment, thereby arguably satisfying the first two elements of a hostile work environment claim, the conduct alleged is neither severe nor pervasive enough to state a cause of action. "Whether harassing conduct is sufficiently severe or pervasive to alter the terms and conditions of a plaintiff's employment includes an objective and a subjective component." *Johnson v. Booker T. Washington Broadcasting Service, Inc.,* 234 F. 3d 501, 508 (11th Cir. 2000). The subjective component requires that the Plaintiff perceive the harassment as severe or pervasive, while the objective component requires that a reasonable person in the Plaintiff's position also view the harassment as severe or pervasive. *See id.* In evaluating the objective severity of the alleged harassment, a court considers: "(1) the frequency of harassing conduct; (2) the severity of the harassment; (3) whether the conduct is physically threatening or simply an offensive utterance; and (4) whether the conduct unreasonably interferes with the plaintiff's job duties." *Brathwaite v. School Board of Broward County, Fla.,* 2017 WL 4278507, at *3 (S.D. Fla. 2017) (citing *Mendoza v. Borden, Inc.,* 195 F. 3d 1238, 1246 (11th Cir. 1999)); *Weatherly v. ABC Legal, Inc.*, 2024 WL 2698023, at *8 (11th Cir. May 24, 2024).

Here, the First Amended Complaint lacks allegations from which a workplace environment of severe or pervasive harassment can be inferred based on either race or gender. Plaintiff claims that the purported harassment included: "(1) being held to different and higher standards than male coaches; (2) being subjected to heightened scrutiny and micromanagement not applied to male coaches; (3) being displaced from her office to accommodate a male coach; (4) being told not to recruit American players because she did not 'connect with them'; (5) being skipped over when announcing coaches at events; (6) receiving unjustifiably low evaluation scores; (7) being subjected to student-athlete complaints driven by gender stereotypes, which Defendant credited

without appropriate skepticism; [and] (8) being required to operate within a segregated system that perpetuates gender stereotypes." [ECF No. 39, ¶¶ 201, 233]. However, the factual allegations relating to this alleged conduct are entirely vague and conclusory, and the First Amended Complaint fails to demonstrate how such conduct altered the terms and conditions of Plaintiff's employment to create a hostile work environment.

Plaintiff's allegations regarding office displacement, micromanagement, scrutiny, and exclusion have been found to be insufficient to establish the existence of a hostile work environment. *See McKitt v. Alabama Alcoholic Beverage Control Bd.*, No. 2:12-CV-673-WHA, 2013 WL 5406804, at *12 (M.D. Ala. Sept. 25, 2013), *aff'd*, 571 F. App'x 867 (11th Cir. 2014) (finding alleged instances of harassment such as accepting white person's complaint at face value, county reassignment, lower than usual evaluation scores, prohibiting use of golf carts despite allowing white agents, heightened scrutiny and criticism compared to white agents' work, *inter alia*, did not constitute the level of severe or pervasive harassment necessary to support hostile work environment claim); *Goldwire v. City of Riviera Beach*, 2020 WL 14041267, at *4 (S.D. Fla. Sept. 9, 2020) (finding reassignment to smaller office, derogatory comments, supervisors targeting, isolating and scrutinizing plaintiff's work, and exclusion from meetings, among others, were not objectively severe or pervasive to sustain a hostile work environment claim); *Barnwell v. Shulkin*, No. 16-23194-CIV, 2017 WL 4810598, at *5 (S.D. Fla. Oct. 25, 2017) (finding being moved from an office to a cubicle taken collectively with other alleged discrimination conduct did not amount to hostile work environment); *Joiner v. Hines*, No. 2:19-CV-374-WKW, 2021 WL 2926293, at *11 (M.D. Ala. July 12, 2021) (finding plaintiff's "laundry list of events" including relocation of office and instruction not to speak with Board members did not demonstrate an objectively hostile work environment); *Dockery v. Nicholson*, 170 F. App'x 63, 67 (11th Cir. 2006)

(finding allegations including new location of office, grabbing of arm, and demeaning comments do not meet standards for establishing the existence of a hostile work environment that was sufficiently severe or persuasive to alter the terms and conditions of plaintiff's employment).

There are no allegations demonstrating any of the complained of conduct [ECF No. 39, ¶ 136] was linked to Plaintiff's race or gender, nor is there any indication that this action altered the terms and conditions of Plaintiff's employment. Pursuant to the First Amended Complaint, Plaintiff was employed for over 12 years, and the alleged issues did not arise until October 2022 – more than a decade into her employment. (ECF No. 39, ¶¶ 128-129, 136-140). Plaintiff's own allegations claim that her performance both on-court and off-court was exemplary and at a very high level. (ECF No. 39, ¶¶ 129, 132-135, 144).

Notably, the First Amended Complaint contains no allegation of frequent slurs or epithets, and, more fundamentally, zero allegations of offensive comments tied to Plaintiff's race or gender – underscoring the absence of discriminatory harassment based on a protected characteristic. "Plaintiff was not subjected to racially pejorative remarks multiple times a day, every day, . . . [n]or was Plaintiff ever physically threatened . . . In sum, while Plaintiff's working conditions may have been unpleasant, and [her] supervisor may have been an unfair and unkind boss, Plaintiff has not shown that [s]he faced the objectively severe or pervasive harassment necessary to sustain a hostile work environment claim." *Zarza v. Tallahassee Hous. Auth.*, 686 F. App'x 747, 752–53 (11th Cir. 2017); *see also Goldwire v. City of Riviera Beach*, 2020 WL 14041267, at *4 (S.D. Fla. Sept. 9, 2020) ("Merely demonstrating that her working conditions were unpleasant or that her supervisors or management were unfair or unkind is not enough to show that objectively severe or pervasive harassment occurred sufficient to sustain a hostile work environment claim"); *McCann*

*v. Tillman,* 526 F. 3d 1370, 1378 (11th Cir. 2008) (finding even repeated racial insults to not be severe or pervasive enough to alter terms of employment).

Plaintiff's conclusory allegations of "severe" or "pervasive" harassment do not rise to the level necessary to state a claim [ECF No. 39, ¶¶ 203, 234] and Counts Three and Six must be dismissed as a matter of law. *See Foster v. Select Medical Corp., Inc.*, 2012 WL 1415499, at *6 (dismissing hostile work environment claim where allegations of harassment were conclusory and overall insufficient to demonstrate plaintiff was harassed because of race); *see also Perrero v. Spectator Management Group,* 2006 WL 8432607, at *5-7 (S.D. Fla. 2006) (dismissing hostile work environment claim with prejudice where alleged harassment was neither frequent, severe, or directly threatening enough to alter terms and conditions of employment); *Freese v. Wuesthoff Health Sys., Inc.*, 2006 WL 1382111, at *6 (M.D. Fla. May 19, 2006) (dismissing hostile work environment claim based on insufficient allegations establishing existence of hostile or abusive environment).

## V.   PLAINTIFF'S GENERALIZED ALLEGATIONS OF DISCRIMINATION OR SEGREGATION BY OTHER UNIVERSITIES SHOULD ME STRICKEN AS IMMATERIAL.

All allegations concerning hiring statistics or employment practices at other universities should be stricken as immaterial and impertinent and unrelated to the controversy at issue. "Generalized allegations of discrimination in the subject industry, or in education and training, hold little probative value in identifying discrimination in the relevant industry. Evidence of discrimination in other jurisdictions or on a nationwide basis also have little or no probative value." *Peightal v. Metro. Dade Cnty.*, 940 F.2d 1394, 1403 (11th Cir. 1991) (citations omitted).

The First Amended Complaint includes allegations regarding hiring statistics and gender representation at other universities. (ECF No. 39, ¶¶ 15-24, 28-32). Under Title VII, the relevant

inquiry is *whether this Defendant engaged in unlawful discrimination*. Allegations regarding unrelated third-party institutions have no bearing on Defendant's liability and serve only as prejudicial material confusing the relevant issues. Plaintiff also includes allegations to broader historical injustices including racial segregation likewise purely immaterial and inflammatory. (ECF No. 39, ¶¶ 26-27, 63). Plaintiff's allegations regarding breach of duty are likewise irrelevant to Plaintiff's Title VII claims. (*Id*., ¶¶ 67-81).  Plaintiff's request for judicial notice in paragraph 15, fn. 1 must also be stricken. *Garcia v. Chapman*, 911 F. Supp. 2d 1222, 1245 (S.D. Fla. 2012).

Accordingly, paragraphs 14-24, 26-28, 63, and 67-81 to the extent they are not directly tied to Defendant's conduct, policies, practices, or employment decision, should be stricken as immaterial and impertinent under Rule 12(f). *Vega v. Knowledge Learning Corp.*, No. 10-81519-CIV, 2011 WL 13225181, at *3 (S.D. Fla. July 1, 2011) (striking all references to age in the complaint based on lack of relevance); *Smith v. City of Lake City, Fla.*, 2012 WL 4772286, at *2 (M.D. Fla. Oct. 8, 2012) (granting motion to strike allegations that defendant discriminated against other African American employees because individual plaintiff could not bring pattern or practice claim); *Clark v. Zale Corp.*, 2013 WL 4927902, at *3 (M.D. Fla. Sept. 12, 2013) (striking allegations of pattern and practice discrimination because plaintiff could not maintain such claim without certifying class action); *see also Garcia v. Chapman*, 911 F. Supp. 2d 1222, 1244 (S.D. Fla. 2012) (agreeing "that many allegations, such as those concerning individuals wholly unrelated to the instant case, have no possible relation to the controversy" but denying to strike all the paragraphs and exhibits at issue, in their entirety, without paragraph-by-paragraph analysis provided by defendant).

WHEREFORE, the Defendant, FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES, respectfully requests this Court grant the Motion to Dismiss the First Amended Complaint and Strike Paragraphs 14-24, 26-28, 63, 67-81, and any other relief deemed appropriate.

I HEREBY CERTIFY that on this 18th day of February, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

WYDLER LAW
*Attorneys for Defendant, FIU Board of Trustees*
1550 Madruga Ave, Suite 400
Coral Gables, FL 33146
(305) 446-5528
(786) 422-1373 (fax)

BY  /s/ Lourdes Espino Wydler
    LOURDES ESPINO WYDLER
    F.B.N.:  719811
    lew@wydlerlaw.com
    LAUREN D. MARTIN
    F.B.N.:  1034166
    ldm@wydlerlaw.com
    Secondary email:
    guertty@wydlerlaw.com

## SERVICE LIST

Christopher C. Sharp, Esq.
Florida Bar No: 996858
Sharp Law Firm, P.A.
1600 W. State Road 82, Suite C
Fort Lauderdale, FL 33315-2244
(954) 909-4246
(954) 827-8028 fax
(954) 818-4869 cell
chris@csharplawfirm.com
csharplaw@aol.com
*Counsel for Plaintiff*

Thomas Newkirk, Esq.
Myles D. Young, Esq.
Newkirk Zwagerman, P.L.C.
3900 Ingersoll Ave, Suite 201
Des Moines, IA 50312
(515) 883-2000 phone and fax

tnewkirk@newkirklaw.com
myoung@newkirklaw.com
***Co-Counsel for Plaintiff***
***Pro Hac Vice***